**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

TRUSTEES OF THE IRON WORKERS           *
LOCAL UNION NO. 5 AND
IRON WORKERS EMPLOYERS                 *
ASSOCIATION EMPLOYEE
PENSION TRUST, *et al.*,                *

     **Plaintiffs,**                     *
**v.**                                                          **Case No.: GJH-18-1857**
                                          *

FACADE INSTALL                         *
OPERATING CO., D.C., INC.,             *

     **Defendant.**                      *

                                 *
\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

       The trustees of three employee benefit plans for iron workers, two iron worker industry labor-management funds, and an iron worker's union bring this action against Defendant Facade Install Operating Co., D.C., Inc. ("Defendant"), a District of Columbia corporation that performs iron work as a contractor or subcontractor, to collect unpaid contributions to the various funds, as well as unpaid wages owed to union member workers. Plaintiffs seek remedies under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 *et seq.*, the Labor-Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA"), and the terms of a collective bargaining agreement. Following Defendant's failure to answer or otherwise defend in this action, the Clerk entered its default on September 24, 2019. Now pending is Plaintiffs' Motion for Default Judgment against Defendant pursuant to Federal Rule of Civil Procedure 55(b). ECF

1

No. 8. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, Plaintiff's Motion for Default Judgment will be granted in part and denied in part.

## I.     BACKGROUND

The following facts are established by the Complaint, ECF No. 1, and affidavits and accompanying exhibits filed in support of the Motion for Default Judgment, ECF Nos. 8-2, 8-3, 8-4, 8-5, 8-6, 8-7, 8-8, 8-9. Defendant is a corporation organized under the laws of the District of Columbia that transacts business there as an iron contractor or subcontractor in construction and related industries, and at all times relevant here was an "employer" operating in an "industry affecting commerce" as defined by ERISA, 29 U.S.C. §§ 1002(5), (11), (12), and LMRA, 29 U.S.C. §§ 142(1), (3), 152(2). ECF No. 1 ¶ 5.

Defendant entered into a Collective Bargaining Agreement ("CBA" or "Agreement") with Plaintiff Local Union No. 5 of the International Association of Bridge, Structural and Ornamental Iron Workers ("Local 5") on or about December 12, 2017. ECF No. 1 ¶¶ 4, 9; ECF No. 8-3 ¶ 3; ECF No. 8-2 ¶ 7; *id.* at 8.[1] Local 5 is an unincorporated labor organization pursuant to section 2(5) of LMRA, 29 U.S.C. § 152(5). The CBA establishes terms and conditions of employment for covered ironworkers, including "journeymen" workers and "apprentice" workers paid at 85% or 80% of the journeymen hourly rate ("85% apprentices" and "80% apprentices"), who perform work for Defendant covered under the Agreement. ECF No. 1 ¶ 9; ECF No. 8-3 at 112. By agreeing to the CBA, Defendant agreed to pay its covered employees certain hourly wages. ECF No. 1 ¶ 11; ECF No. 8-2 at 16–17. The CBA also requires Defendant to deduct dues and other assessments for Local 5 from the pay of employees who have authorized the deductions. ECF No. 1 ¶¶ 9, 12; ECF No. 8-2 ¶¶ 3, 10; *id.* at 20.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Other provisions of the CBA incorporate the terms of trust agreements that establish three iron worker benefit trust funds, bind Defendant to those terms, and require Defendant to contribute to the funds. ECF No. 1 ¶¶ 1, 10–11; ECF No. 8-2 ¶ 7–8; *id.* at 19–21. These include: the Iron Workers Local Union No. 5 and Iron Workers Employers Association Employee Pension Trust ("Pension Fund"), *see* ECF No. 8-2 ¶ 2; *id.* at 19–20, 38; the Iron Workers Trust Fund Local No., 5, Washington, D.C. ("Welfare Fund"), *see* ECF No. 8-2 ¶ 2; *id.* at 19, 57; and the Ironworkers Local 5 Joint Training Program Trust Fund, Washington, D.C. ("Apprenticeship Fund"), also known as the Iron Workers Apprenticeship Training Trust Fund and the Iron Workers Apprenticeship and Training Fund, *see* ECF No. 1 ¶ 1; ECF No. 8-2 ¶ 2; *id.* at 21, 76. The three funds, which are administered in Oxon Hill, Maryland, are employee benefit plans, as that term is defined by ERISA, 29 U.S.C. § 1002(3), and are collectively referred to as the "Iron Workers Funds." ECF No. 1 ¶ 1; ECF No. 8-2 ¶ 2, 5. The trustees of the Iron Workers Funds are fiduciaries as defined by ERISA, 29 U.S.C. § 1002(21), and are three of the Plaintiffs in this action. ECF No. 1 ¶ 2.

The CBA also requires Defendant to contribute to two other funds, referred to as the "Industry Funds," which provide benefits to employees and employers in the unionized iron working industry: the Iron Worker Industry Advancement Fund ("Advancement Fund"), ECF No. 1 ¶ 3; ECF No. 8-2 ¶ 2; *id.* at 20; and the Iron Worker-Management Progressive Action Cooperative Fund ("IMPACT"), ECF No. 1 ¶ 3; ECF No. 8-2 ¶ 2; *id.* at 21–22. The Industry Funds are also Plaintiffs in this action. ECF No. 1 ¶ 3. Non-party Zenith American Solutions ("Zenith") is the third-party administrator for the Iron Workers Funds and collects contributions owed to those funds, as well as to the Industry Funds, pursuant to the CBA. ECF No. 8-2 ¶ 2.

Zenith also collects the dues and other assessments deducted by Defendant from the paychecks of authorizing employees and owed to Local 5. *Id.* ¶ 3.

The sums Defendant owes to the Iron Workers Funds, the Industry Funds, and the dues and assessments owed to Local 5 are collectively referred to as "contributions," which must be calculated and submitted to Zenith on a monthly basis. ECF No. 1 ¶ 13; ECF No. 8-2 ¶ 3. The amount owed to each of the funds each month is calculated by multiplying the number of hours that covered employees worked in that month by a contribution rate set for each fund in the CBA and subsequent amendments. ECF No. 1 ¶ 13; ECF No. 8-2 ¶ 9. The total amount of dues and other assessments that Defendant owes to Local 5 each month is calculated in the same manner. ECF No. 8-2 at 20, 111. By the 15th day of each month, Defendant must submit to Zenith the payments that it owes to the funds and to Local 5 with a "remittance report" that shows the number of hours worked by each covered worker. ECF No. 1 ¶¶ 13–14; ECF No. 8-2 ¶¶ 9, 11.

Pursuant to the CBA, from June 1, 2017 to June 1, 2018, for each hour worked by covered employees in the role of journeyman, Defendant owed a total of $21.40 in contributions to the Iron Workers Funds, the Industry Funds, and Local 5. ECF No. 8-2 ¶ 15; *id.* at 111–12. That rate is the sum of a $9.59 contribution per hour worked to the Pension Fund, $8.675 per hour to the Welfare Fund, $0.85 to the Apprenticeship Fund, $0.115 to the Advancement Fund, $0.20 to IMPACT, and $1.97 in Local 5 dues and assessments. *See id.* at 111–12. Defendant owed $19.96 per hour worked by 85% apprentices and $19.48 for 80% apprentices. ECF No. 8-2 ¶ 15; *id.* at 112. The Pension Fund contribution is the only component of the total contribution that differs based on the seniority of the worker. ECF No. 8-2 ¶ 15; *id.* at 112. The Pension Fund contribution during this period was $8.15 per hour worked by 85% apprentices and $7.67 for 80% apprentices. *Id.* at 111–12.

The trust agreements establishing the Iron Workers Funds, which are incorporated by the CBA, provide that an employer who fails to timely pay its contributions is liable for liquidated damages of 10% of the contributions owed, plus interest at the rate of 12% per annum. ECF No. 1 ¶ 21; ECF No. 8-2 ¶¶ 12–13; *id.* at 48–49, 68–69, 97. The CBA further provides that dues and assessments for Local 5 "are due at the same time as amounts due to the [Iron Workers Funds] and late payments shall be subject to the same provisions for liquidated damages, interest and expenses of collection as are amounts due to the other Funds." *Id.* at 20. For the Pension Fund and the Welfare Fund, interest is calculated from the fifth day following the due date until the date paid. *Id.* at 49, 69. The Apprenticeship Fund trust agreement, however, includes no grace period and mandates that interest will be calculated from the date due until the date paid. *Id.* at 97. Each of the three trust agreements also provides that Local 5, the trustees, or their designated agent may audit an employer's records whenever the trustees find it necessary. ECF No. 1 ¶ 16; ECF No. 8-2 ¶ 20; *id.* at 49, 69, 95. The agreements further authorize the trustees to initiate legal action to obtain orders compelling audits and collect delinquent contributions, interest, and liquidated damages. ECF No. 8-2 at 50, 70, 97. Delinquent employers are also liable for attorneys' fees and audit costs. ECF No. 8-2 ¶ 21; *id.* at 50, 70, 97.

Plaintiffs have not provided the trust agreements or other documents establishing or governing the Industry Funds, although a declaration by Zenith account executive Kathy Cole (the "Cole declaration") states that the "Industry Funds are governed by the terms of their Restated Agreements and Declarations of Trust, among other things." ECF No. 8-2 ¶ 6. With respect to the Advancement Fund, the CBA provides a contribution rate and states that contributions "shall be made on the same basis as contributions to the Pension, Welfare, and Apprentice and Training Trust Funds and late payments shall be subject to the same

requirements and provisions for liquidated damages. Interest and expenses of collection as are [sic] the other funds." ECF No. 8-2 at 20. For IMPACT, the CBA provides a contribution rate, but contains no provisions concerning interest, liquidated damages, or other penalties for unpaid contributions. ECF No. 8-2 at 21. It states simply that "[t]he reporting, payment, frequency of payment and administration of such contributions shall be governed by the terms of the IMPACT trust agreement, policies and resolutions," which Plaintiff has not provided. *Id.*

Plaintiffs' Complaint alleges, and the Cole declaration substantiates, that Defendant did not submit remittance reports or contributions for the months of January, February, and March 2018. ECF No. 1 ¶ 18; ECF No. 8-2 ¶ 1. According to the Cole declaration, however, payroll documentation provided by employees of Defendant shows that workers covered by the CBA worked at least 529 hours for Defendant during those months. ECF No. 8-2 ¶ 14. These workers – journeymen John Phelps, Jeremiah Long, Bright Omoma, and Jamil Saunders, 85% apprentice John Wallace, and 80% apprentice Eliezer Araniva – were referred by Local 5 to work for Defendant. *Id.* ¶ 16; *see id.* at 114; ECF No. 8-3 ¶ 7. The Complaint alleges, and declarations substantiate, that Defendant failed to pay these workers in part or in full for work during this period on the "WMATA Escalator Canopy Project" in Montgomery County, Maryland. ECF No. 1 ¶¶ 24–27; ECF No. 8-3 ¶ 8; ECF No. 8-4 ¶¶ 4–5; ECF No. 8-5 ¶¶ 1, 7–9; ECF No. 8-6 ¶¶ 4–5; ECF No. 8-7 ¶¶ 1, 6–9; ECF No. 8-8 ¶¶ 1, 5–6.

Plaintiffs commenced this action on June 21, 2018. ECF No. 1. The Complaint asserts two claims on behalf of all plaintiffs: a claim under section 515 of ERISA, 29 U.S.C. § 1145, for the unpaid contributions, interest, and liquidated damages, *id.* ¶¶ 17–19; and an additional claim seeking an order to compel Defendants to submit documents to Plaintiffs for an audit and to reimburse Plaintiffs for its costs, *id.* ¶¶ 28–30. Additionally, Local 5 asserts a claim under section

301 of LMRA, 29 U.S.C. § 185, for the unpaid wages. *Id.* ¶¶ 24–27. Plaintiffs also request costs and attorneys' fees. *Id.* at 7. On October 16, 2018, the Court issued an order to Plaintiffs to show cause why the Complaint should not be dismissed for failure to serve Defendant. ECF No. 4. On October 18, 2018, Plaintiffs submitted an affidavit from a process server stating that Defendant was served on August 16, 2018. ECF No. 5; *see also* ECF No. 6. On October 25, 2018, Plaintiffs moved for entry of default by the Clerk. ECF No. 7. Plaintiffs filed the instant Motion for Default Judgment on March 20, 2019. ECF No. 8. The Clerk entered default as to Defendant on September 24, 2019. ECF No. 9.

## II.  STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *Choice Hotels Int'l, Inc. v. Savannah Shakti Corp.*, No. DKC-11-0438, 2011 WL 5118328, at *2 (D. Md. Oct. 25, 2011) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422; *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (noting that "[t]he

defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact," which provide the basis for judgment). Upon a finding of liability, "[t]he court must make an independent determination regarding damages . . . ." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013). Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "affidavits or documentary evidence in the record to determine the appropriate sum." *Int'l Painters & Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 684 (citing *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010)).

## III. DISCUSSION

The Court has subject matter jurisdiction over this action pursuant to Section 502 of ERISA, 29 U.S.C. §§ 1132, and Section 301 of LMRA, 29 U.S.C. § 185. Venue is proper under 29 U.S.C. §§ 1132(e)(2) and 29 U.S.C. § 185(a), as the Plaintiff Iron Workers Funds are administered in Maryland. ECF No. 1 ¶¶ 1, 7; ECF No. 8-3 ¶¶ 1–3; *see Trs. of Nat'l Asbestos Workers Pension Fund & Med. Fund v. Lake Erie Insulation Co.*, 688 F. Supp. 1059, 1060 (D. Md. 1988); *Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Prot., Inc.*, 578 F. Supp. 94, 95 (D. Md. 1983).

### A. Unpaid Contributions

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see Bd. of Trs., Sheet Metal Workers' Nat'l Pension*

*Fund v. Camelot Constr., Inc.*, No. 1:14-CV-161-LMB-TRJ, 2015 WL 13050031, at *3 (E.D. Va. Apr. 14, 2015). Additionally, the LMRA "authorize[s] parties to enforce the provisions of their collective bargaining agreements." *Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, No. ELH-11-832, 2011 WL 5151067, at *3 (D. Md. Oct. 27, 2011). Plaintiffs' first claim asserts that Defendant was obligated under the terms of the CBA and the trust agreements that it incorporates to contribute monthly to the Iron Workers Funds and the Industry Funds, but failed to do so for certain months. ECF No. 1 ¶ 15; ECF No. 8-1 at 5.

The Complaint specifically alleges that Defendant failed to pay contributions to both sets of funds in February and March 2018, ECF No. 1 ¶ 15. Plaintiffs' Motion for Default Judgment, however, adds January 2018 as well. ECF No. 8-1 at 5. Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The Court will permit the addition of damages for January 2018 here, however, because they do not differ in kind from the damages sought in the Complaint, and the Motion for Default Judgment seeks a lesser overall amount of damages for unpaid contributions than the Complaint. *Compare* ECF No. 1 ¶ 19 (seeking $12,560.16 in unpaid contributions) *with* ECF No. 8-1 at 6 (seeking $10,909.24 in unpaid contributions); *cf. Trs. of the Bricklayers Local 1 of MD, VA, and DC Health & Welfare Fund v. WW Reid Masonry, LLC*, No. GJH-16-2328, 2016 WL 4595674, at *5 (D. Md. Sept. 2, 2016).

Assuming the truth of the Complaint's well-pleaded allegations about Defendant's failure to pay contributions to both sets of Funds, as permissibly augmented in the Motion for Default Judgment, Plaintiffs have established Defendant's liability under the CBA, the trust agreements, section 502(g) of ERISA, 29 U.S.C. § 1132(g)(2), and section 301 of LMRA, 29 U.S.C. § 185(a). 29 U.S.C. § 1132(g)(2) states that in any action brought to enforce the payment of

delinquent contributions to a plan under 29 U.S.C. § 1145, and in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A)      the unpaid contributions,
> (B)      interest on the unpaid contributions,
> (C)      an amount equal to the greater of—
>> i.   interest on the unpaid contributions, or
>> ii.   liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)      reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E)      such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *see also Int'l Painters & Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 686; *Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. Columbus Show Case Co.*, No. 1:14-cv-478, 2014 WL 3811252, at *4 (E.D. Va. Aug. 1, 2014); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Lake Side Plumbing & Heating, Inc.*, No. 1:12-CV-00298 LO/IDD, 2012 WL 6203001, at *4 (E.D. Va. Nov. 20, 2012). 29 U.S.C. § 185(a) does not direct specific damages for violations of a collective bargaining agreement, but grants standing to third-party beneficiaries of such an agreement to bring an action to enforce its terms and seek remedies for its breach. *Int'l Painters & Allied Trades Indus. Pension Fund v. H.C. Ackerman & Son, Inc.*, No. JKB-11–2117, 2012 WL 251963, at *2 (D. Md. Jan. 24, 2012).

Plaintiffs seek $10,909.24 in unpaid contributions, $1,090.93 in liquidated damages, and $1,291.86 in interest, which is calculated and requested through March 15, 2019. ECF No. 8-1 at 6–8; ECF No. 8-2 at 114. These amounts are premised on exhibits to Plaintiff's memorandum in support of default judgment, including the Cole declaration, which attests to the terms of the CBA and the trust agreements, including the 10 percent liquidated damages rate and 12 percent interest rate on late contributions. ECF No. 8-2 ¶¶ 12–13; *see also id.* at 20, 48–49, 68–69, 97.

The declaration asserts that Plaintiffs are entitled to these damages on the basis of "payroll documentation provided by several of Defendant's employees." *Id.* ¶ 13. The documentation, identified specifically in Plaintiffs' memorandum, consists of declarations by journeymen John Phelps, Jeremiah Long, Bright Omoma, 85% apprentice John Wallace, and 80% apprentice Eliezer Araniva. ECF No. 8-1 at 6 (citing ECF Nos. 8-4, 8-5, 8-6, 8-7, 8-8). No declaration was submitted for journeyman Jamil Saunders. A declaration by Ray Cleland, president of Plaintiff Local 5, attests that these six employees were referred by Local 5 to work for Defendant between January and March 2018, and that Phelps, Long, Omoma, and Saunders were journeymen, Wallace was an 85% apprentice, and Araniva was an 80% apprentice. ECF No. 8-3 ¶ 7.

The workers state that they worked for Defendant on the WMATA Escalator Canopy Project in January, February or March 2018, or in some combination of those months, for an identified number of hours. ECF No. 8-4 ¶¶ 1, 4; ECF No. 8-5 ¶¶ 1, 5; ECF No. 8-6 ¶¶ 1, 4; ECF No. 8-7 ¶¶ 1, 6; ECF No. 8-8 ¶¶ 1, 4. John Phelps further declares that while working on the project between January 30, 2018 and March 2, 2018, he compiled a "Steward's Report" showing all hours worked by members of Local 5 in that period, as reported to him by the workers each day. ECF No. 8-7 ¶¶ 1, 4. The hours of work claimed in the workers' declarations match their total hours shown on the Steward's Report, which is provided as an exhibit to Phelps' declaration. ECF No. 8-7 at 8. According to the Report, Phelps worked 179 hours, Wallace worked 139, Long worked 21, Araniva worked 110, Omoma worked 16, and Saunders worked 64, totaling 529 hours of work. *Id.*

Plaintiffs assert that they are entitled to rely on the worker declarations attesting to these hours in calculating the contributions owed by Defendant. ECF No. 8-1 at 6. The Court agrees and will accept the Cole declaration and the declarations of the workers, which are backed by

Phelps' Steward's Report, as adequate evidence of the hours worked by each worker and the contributions owed. *See WW Reid Masonry*, 2016 WL 4595674, at *6 (finding that the record adequately substantiated Plaintiffs' request for unpaid contributions and liquidated damages where the president of the plaintiff union attested that plaintiffs received some of the defaulting defendant employer's payroll records and contributions were calculated by hours worked); *cf. Holland v. Gapco Mining Co., Inc.*, No. 1:05-0042, 2006 WL 890145, at *2 (S.D. W.Va. Mar. 30, 2006) ("In cases where an employee benefit fund can determine the amount of damages, the burden of disproving the amount of damages shifts to the employer.").

On the basis of the Cole declaration, and a tabulation of damages that it includes as an exhibit (the "Cole tabulation"), ECF No. 8-2 at 114, Plaintiffs assert that Defendant owes contributions totaling $10,909.24 for 529 hours of work, ECF No. 8-1 at 6 (citing ECF No. 8-2 ¶¶ 14–17). The Cole tabulation calculates this amount by multiplying the number of hours of work performed by each class of employee – journeyman, 85% apprentice, and 80% apprentice – by the total contribution rate for each class – $21.40 per hour, $19.96 per hour, and $19.48 per hour, respectively. *See* ECF No. 8-2 at 111–12, 114. The total amount of contributions sought consists of $513.60 in unpaid contributions for January 2018, $8,239.56 for February, and $2,156.08 for March. *Id.* Because the contributions sought are substantiated by the record, as described previously, Plaintiffs are entitled to $10,909.24 in unpaid contributions for the months of January, February, and March 2018. Under 29 U.S.C. § 1132(g)(2)(C)(ii) and 29 U.S.C § 185(a), Plaintiffs are further entitled to liquidated damages for unpaid contributions to the Iron Workers Funds and the Advancement Fund and unpaid dues and assessments to Local 5.

Plaintiffs have not demonstrated entitlement to liquidated damages for IMPACT, however. As noted previously, Plaintiffs have not provided the trust agreement for IMPACT.

Further, unlike with the Advancement Fund, no provision of the CBA states that liquidated damages shall be calculated for IMPACT in the same manner as the Iron Workers Funds.[2] While the Cole declaration cites provisions of the CBA for the assertion that "the collective bargaining agreement requires a signatory employer to pay liquidated damages at a rate of ten percent on all late contributions," the cited sections do not substantiate that claim. ECF No. 8-2 ¶ 12 (citing *id.* at 19, 21). They merely state that employers who fail to make timely contributions to each of the Iron Workers Funds shall be liable for liquidated damages, interest, and collection expenses pursuant to the terms of the trust agreements for each fund. *Id.* at 19, 21.

Accordingly, the Court will decline to award the $1,090.93 in liquidated damages that Plaintiff seeks, which includes ten percent of the unpaid contributions to IMPACT. *Cf. Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1022 (4th Cir. 1997) (holding that "multiemployer funds are not permitted to 'enforce a nonexistent contractual obligation'" (quoting *Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 138 (3d Cir. 1993)). Plaintiffs are entitled to unpaid contributions for 529 hours of work by covered employees, which at the $0.20 per hour contribution rate for IMPACT entitles them to $105.80 in unpaid IMPACT contributions. Subtracting that amount from the total amount of unpaid contributions, Plaintiffs are entitled to liquidated damages equal to ten percent of $10,803.44, or $1,080.34.

Plaintiffs' request for $1,291.86 in interest on the unpaid contributions is also partially undermined by the record. As Plaintiffs note, Section 502 of ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2). The Cole declaration asserts that the Iron Workers Funds trust agreements assess

---

[2] The Complaint and the Cole declaration conspicuously do not claim that the Industry Funds are "plans" as defined by ERISA. *See* ECF No. 1 ¶ 3; ECF No. 8-2 ¶¶ 5–6.

interest at a rate of twelve percent per annum on all late contributions and that "[i]nterest is calculated from the date due through the date the contributions are paid." ECF No. 8-2 ¶ 13. As explained previously, however, only the Apprenticeship Fund trust agreement so states. *See id.* at 97. In contrast, the Pension Fund and Welfare Fund agreements provide that an employer that "fails to pay contributions within five (5) working days of the due date . . . shall be liable . . . for interest on such delinquent contribution at the rate of twelve percent (12%) per annum calculated from the fifth such working day, as above-described, to the date the delinquent contribution is actually paid to the Fund." *Id.* at 49, 69.

Therefore, to determine the amount of interest owed for unpaid contributions to the Iron Workers Funds, the Court will apply the 12 percent per annum interest rate, which Plaintiffs convert to 0.033% interest per day, to the amount of unpaid contributions to each of the three funds, subtracting five days from the period since the contributions' due date for the Pension Fund and Welfare Fund. The same methodology applies for calculating interest for unpaid contributions to the Advancement Fund and unpaid Local 5 dues and assessments, though an ambiguity exists for those calculations because the CBA directs that interest for both is due in the same manner as for the Iron Workers Funds, which, as just described, start calculating interest at different times. ECF No. 8-2 at 20. The CBA further states, however, that when an employer is delinquent as to the Advancement Fund or Local 5, the Fund or the union "may estimate the amount due in accordance with the procedure set forth in Article V, Section 14 of the Pension Fund Trust Agreement." *Id.* Because the CBA chose the Pension Fund agreement as the reference point for responding to missed payments to the Advancement Fund and Local 5, the Court will apply the Pension Fund's five-day interest grace period to interest on Advancement Fund contributions and Local 5 dues and assessments.

Finally, as with liquidated damages, the Court will award no interest for unpaid contributions to IMPACT because the record does not demonstrate that Plaintiffs are entitled to it. Unlike with the Advancement Fund and Local 5 dues, the CBA provides no guidance on interest calculation for unpaid IMPACT contributions and instead incorporates the terms of the IMPACT trust agreement, which Plaintiffs have not provided. *Id.* at 20–21. While the Cole declaration states that "[t]he collective bargaining agreement also mandates that a signatory employer shall pay interest at [twelve percent per annum] assessed on all late contributions," neither the sections of the CBA that the declaration cites for that statement, nor any other, so mandate. *Id.* ¶ 13. Accordingly, Plaintiffs are entitled to interest on unpaid contributions to the Iron Workers Funds and Advancement Fund and unpaid dues and assessments to Local 5 in the total amount of $1,280.28, calculated as follows through March 15, 2019:[3]

---

[3] The number of work hours listed in the following table for each of the three months at issue differs from the Cole tabulation, ECF No. 8-2 at 114, which incorrectly transposed the hours worked per month from John Phelps' Steward's Report. *See* ECF No. 8-7 at 8. The total number of hours at issue, 529, is the same; what differs is the allocation of hours to each month, which impacts the calculation of interest, though not the total amount of unpaid contributions owed.

| | Work Hours | Due Date | Days Overdue | Days Overdue (w/grace period) | Apprenticeship Fund Contrib. | Interest Owed | Contrib. for Pension, Welfare, Advancement Funds & Local 5 | Interest Owed |
|---|---|---|---|---|---|---|---|---|
| **January 2018** | | 2/15/18 | 393 | 388 | | | | |
| Journeymen | 16 | | | | $0.85 | $1.76 | $20.35 | $41.69 |
| 85% App. | 0 | | | | $0.85 | $0.00 | $18.91 | $0.00 |
| 80% App. | 0 | | | | $0.85 | $0.00 | $18.43 | $0.00 |
| **February 2018** | | 3/15/18 | 365 | 360 | | | | |
| Journeymen | 250 | | | | $0.85 | $25.60 | $20.35 | $604.40 |
| 85% App. | 125 | | | | $0.85 | $12.80 | $18.91 | $280.81 |
| 80% App. | 104 | | | | $0.85 | $10.65 | $18.43 | $227.71 |
| **March 2018** | | 4/15/18 | 334 | 329 | | | | |
| Journeymen | 14 | | | | $0.85 | $1.31 | $20.35 | $30.93 |
| 85% App. | 14 | | | | $0.85 | $1.31 | $18.91 | $28.74 |
| 80% App. | 6 | | | | $0.85 | $0.56 | $18.43 | $12.01 |
| **TOTAL** | | | | | | **$53.99** | | **$1,226.29** |
| | | | | | | | **Total Interest Owed** | **$1,280.28** |

In sum, Plaintiffs are entitled to $10,909.24 in unpaid contributions, $1,080.34 in liquidated damages, and $1,280.28 in interest, for a total of $13,269.86 in damages under Count I of the Complaint.

### B. Unpaid Wages

Count II of the Complaint is Plaintiff Local 5's claim for the wages that Defendant failed to pay the six workers at issue. Local 5 brings this claim under LMRA, 29 U.S.C. § 185(a), to enforce the terms of the CBA. ECF No. 1 ¶¶ 25–27. Under that provision, unions "may bring suits to enforce the terms of a collective bargaining agreement, including suits to recover unpaid wages or vacation pay." *In re Altair Airlines, Inc.*, 727 F.2d 88, 90 (3d Cir. 1984) (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW), AFL-CIO v.*

*Hoosier Cardinal Corp.*, 383 U.S. 696, 699 (1966)); *see also Int'l Ass'n of Heat & Frost Insulators & Allied Workers Local No. 24 v. Chesapeake Firestop Prods., Inc.*, No. TDC-16-1116, 2017 WL 1535108, at *5 (D. Md. Apr. 27, 2017) (awarding damages to the plaintiff union in a claim for a union member employee's unpaid wages); *In re Preston Trucking Co., Inc.*, 392 B.R. 623, 629 (D. Md. 2008) ("A union, as a party to the collective bargaining agreement, may always bring suit against an employer for a violation of the agreement."). The CBA in force here establishes wage rates for covered workers. ECF No. 8-2 at 16–17.

As described previously, declarations by five of the workers – journeymen John Phelps, Jeremiah Long, and Bright Omoma, 85% apprentice John Wallace, and 80% apprentice Eliezer Araniva – attest to the hours that they worked for Defendant. ECF No. 8-4 ¶¶ 1, 4; ECF No. 8-5 ¶¶ 1, 5; ECF No. 8-6 ¶¶ 1, 4; ECF No. 8-7 ¶¶ 1, 6; ECF No. 8-8 ¶¶ 1, 4. The hours attested to match Phelps' Steward's Report. ECF No. 8-7 at 8. The declaration by Local 5 president Ray Cleland further confirms that Local 5 referred the workers to Defendant between January and March 2018 and that Phelps, Long, Omoma, and Jamil Saunders were journeymen while Wallace was an 85% apprentice and Araniva was an 80% apprentice. ECF No. 8-3 ¶ 7. An exhibit to the Cole declaration identifies the CBA-set wages for each role from June 1, 2017 to June 1, 2018: $31.15 per hour for journeymen, $26.48 for 85% apprentices, and $24.92 for 80% apprentices. ECF No. 8-2 at 111–12. The five worker declarations attest that each worker was not paid the properly hour wage for some or all of their work for Defendant.

The declarations and other supporting materials in the record adequately substantiate the workers' entitlement to unpaid wages. Omoma attests that he performed 16 hours of work for Defendant as a journeyman in February and March 2018 but was not paid. ECF No. 8-4 ¶¶ 3–5. He is therefore owed $498.40. Araniva states that he worked 110 hours for Defendant as an 80%

apprentice between February 12, 2018 and March 2, 2018, but was paid only $734.00, which he states constitutes the wages owed for his 40 hours of work from February 12 to February 16. ECF No. 8-5 ¶¶ 4–5, 7. He is accordingly owed wages for 70 hours of work at the 80% apprentice rate, totaling $1,744.40. Long declares that he performed 21 hours of work for Defendant as a journeyman in February 2018 but that he was not paid. ECF No. 8-6 ¶¶ 1, 3–4. He is thus entitled to $654.15 in unpaid wages. Wallace's declaration states that he worked 139 hours for Defendant as an 85% apprentice in February and March 2018 but was paid only $870.04, which he states constitutes the wages owed to him for 40 hours of work. ECF No. 8-8 ¶¶ 1, 3–5. Wallace is therefore entitled to $2,621.52 for the 99 hours of work for which Defendant has not paid him.

Saunders did not submit a declaration, but Local 5 President Ray Cleland's declaration states that Saunders was a journeyman, worked for Defendant, and was not paid for his work. ECF No. 8-3 ¶¶ 7–8. The Steward's Report that Phelps prepared states that Saunders worked 64 hours for Defendant in February 2018. ECF No. 8-7 at 8. Therefore, Saunders is ostensibly owed $1,993.60 in wages. Plaintiffs' memorandum supporting their motion for default judgment, however, states that Saunders is owed only $996.80 for his work and requests only that amount.[4] ECF No. 8-1 at 11. Subtracting $996.80 from the total unpaid wages that Plaintiffs request confirms that this is not simply an error in the memorandum and that Plaintiffs used this apparent miscalculation of Saunders' wages in their overall damages request. The Court will decline to correct Plaintiffs' error; awarding the entirety of Saunders' wages would result in a total unpaid wages award that exceeds what was sought in the complaint, violating Federal Rule of Civil Procedure 54(c).

---

[4] $996.80 would be the wages owed if Saunders had worked only 32 hours as a journeyman.

Finally, Phelps' declaration states that he worked 179 hours for Defendant as a journeyman between January and March 2018. ECF No. 8-7 ¶¶ 1, 6. Phelps attests that he was paid for 141 hours of work performed from January 30, 2018 through February 25, 2018, but at the incorrect rate of $30.85, $0.30 less than the required journeyman rate. *Id.* ¶¶ 7–8. Phelps is accordingly owed $42.30 in unpaid wages for that period. Phelps further states that he was not paid for the 38 hours that he worked for Defendant between February 26, 2018 and March 2, 2018. *Id.* ¶ 9. Defendant thus owes Phelps $1,183.70 in unpaid wages for that period, and a total of $1,226.00 for all of his work. Finally, Phelps states that he spent $208.41 on tools and supplies that Defendant asked him to purchase and for which it promised to reimburse him. *Id.* ¶ 10. Phelps included the receipts as exhibits to his declaration, ECF No. 8-7 at 12–14, and Plaintiffs request that amount in damages, ECF No. 8-1 at 9. Plaintiffs have not cited any provision of LMRA or the CBA, however, that entitles them to damages for unreimbursed purchases of tools and supplies by covered employees, nor is the Court aware of one. The Court will therefore decline to grant Plaintiffs' request for damages for Phelps' purchases.

In sum, Plaintiffs are entitled to damages of $7,771.27 in unpaid wages, consisting of $498.40 in wages for Omoma, $1,744.40 for Araniva, $654.15 for Long, $2,651.52 for Wallace, $996.80 for Saunders, and $1,226.00 for Phelps.

### C. Audit

Count III of the Complaint seeks an order compelling Defendant to cooperate in an audit by Plaintiffs of Defendants' payroll records from January 1, 2017 to the present. ECF No. 1 ¶¶ 28–30; ECF No. 8 at 2; ECF No. 8-1 at 11–12. As the Cole declaration correctly asserts, the Iron Workers Funds trust agreements provide that Local 5, the trustees of one of the funds, or their

designated agent may audit an employer's books and financial records whenever the trustees find it necessary. ECF No. 8-2 ¶ 20; *id.* at 49, 69, 95.

In conjunction with a default judgment regarding the enforcement of a collective bargaining agreement, the Court may also order injunctive relief. *Trs. of the Bricklayers Local 1 of MD, VA, and DC Health & Welfare Fund*, 2016 WL 4595674, at *5. Injunctive relief in the form of an order compelling a defendant to submit to an audit is permissible in ERISA and LMRA actions. *Id.*; *see also Trs. of the Nat'l Asbestos Workers Pension Fund*, 2011 WL 5151067, at *3 (ordering the defendant to allow plaintiff's auditor to conduct an audit and produce any record requested by plaintiff's auditor). Accordingly, the Court will order Defendant to allow Plaintiffs' auditors to conduct an audit of its records beginning January 1, 2017.[5]

### D. Attorneys' Fees

Plaintiffs finally request $10,571.25 in attorneys' fees and $495.00 in costs for this action. ECF No. 8 at 1. As the Cole declaration states, the Iron Workers Funds trust agreements require that an employer that fails to pay contributions must pay the Funds' reasonable attorneys' fees and costs incurred in collecting the delinquent payments. ECF No. 8-2 ¶ 21; *see id.* at 50, 70, 97. The Funds are also entitled to reasonable fees and costs under section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D).

In support of their request, Plaintiffs offer the declaration of Rebecca Richardson, counsel of record for Plaintiffs, who states that she has been practicing law for nine years. ECF No. 8-9 ¶ 1. Richardson attests that she and three other attorneys performed work on this case: Francis J.

---

[5] The Court notes that Plaintiffs' Complaint sought an order to Defendant to reimburse Plaintiffs for the cost of the audit. ECF No. 1 at 8. Plaintiffs' memorandum in support of default judgment does not renew that request, however. ECF No. 8-1 at 11–12. Plaintiffs instead indicate that they will bring a separate collection action if Defendant fails to pay additional unpaid contributions discovered by the audit. ECF No. 8-1 at 11–12. A request for reimbursement of audit costs may properly be brought in such a subsequent action.

Martorana, who has been practicing for more than thirty-five years; Diana Cohn, who has been practicing for more than five years; and Katelyn Julia Davis, who has been practicing for less than one year. *Id.* ¶¶ 2–4. Richardson states that her firm negotiated with Plaintiffs a $245.00 per hour rate for attorney work, which increased on January 1, 2019 to $253.00 per hour, and that the four attorneys have collectively expended 42.25 hours of attorney time on the case. *Id.* ¶¶ 6–7.

Richardson's declaration includes an exhibit providing granular detail about each block of time spent working on this matter between June 15, 2018 and February 22, 2019. *Id.* at 5–7. The Court finds the time billed and hourly rates applied to be reasonable, well documented, and commensurate with this District's Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. *See* Loc. R. app. B (D. Md.).[6] The Court will thus award $10,571.25 in attorneys' fees. Richardson further declares that the filing fee for this case was $400.00 and that Plaintiffs incurred $95.00 in service costs for a private process server. ECF No. 8-9 ¶ 11. An exhibit to the declaration shows the invoice for the process server. *Id.* at 9. Plaintiffs will thus be awarded $495.00 in costs, for a total award of $11,066.25 in fees and costs.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, ECF No. 8, is granted in part and denied in part. Plaintiffs are awarded $32,110.39 in damages, consisting of $10,909.24 in unpaid contributions, $1,083.34 in liquidated damages, $1,280.28 in interest, $7,771.27 in unpaid wages, and $11,066.26 in fees and costs. Defendant is also ordered to

---

[6] As Richardson's declaration notes, the hourly rate her firm charged to Plaintiffs was in the middle of the range offered by the Local Guidelines for attorneys with five to eight years of experience and below the range for attorneys with more than twenty years of experience. ECF No. 8-9 ¶ 6 n.2. On that basis, Richardson further explains, Plaintiffs declined to reduce the rate charged for work by Davis, whose local guideline rate range is between $150 and $225. Because the billing chart Richardson has provided shows that Davis performed only 4.25 hours of work on the case, and because the firm's rate at that time was only $28 above the top rate in the guideline range for her level of experience, the Court finds Plaintiffs' overall fees request to be reasonable.

submit to an audit by Plaintiffs of its records from January 1, 2017 to the present. A separate

Order shall issue.


Date: <u>February 27, 2020</u>                          /s/_____

GEORGE J. HAZEL
United States District Judge